Billy WALKER *v.* STATE of Arkansas

CA CR 83-118                      662 S.W.2d 196

Court of Appeals of Arkansas
Division II
Opinion delivered December 21, 1983

*F. James Jefferson,* for appellant.

*Steve Clark,* Atty. Gen., by: *Marci L. Talbot,* Asst. Atty. Gen., for appellee.

JAMES R. COOPER, Judge. In this criminal case, the appellant was convicted by a jury of making and uttering a hot check and sentenced as an habitual offender to a term of three years in the Arkansas Department of Correction and a fine of $1,200.00. From that conviction, comes this appeal.

For reversal, the appellant contends the verdict of the jury was contrary to the law, inasmuch as Ark. Stat. Ann. § 67-720 requires intent to defraud as an element of the offense with which the appellant was charged and the appellant produced sufficient evidence to negate such intent. We disagree.

On July 19, 1982, the appellant, who was the owner of K-City Furniture Mart, purchased 12 china cabinets from Ruff and Parkhill Mfg. of Harrison. The appellant had been a regular customer of Ruff & Parkhill's. He testified that at the time he purchased these cabinets and paid for them with a check drawn on the account of K-City Furniture Mart for $1,200.00, he informed Mr. David Ruff, a partner in Ruff & Parkhill, that he would take the cabinets to Texarkana where he had a buyer and, upon selling the cabinets, return and deposit the funds from the sale into the account upon which the $1,200.00 check was drawn in order for there to be sufficient funds in his account for the check to clear. Mr. Ruff would neither confirm or deny the appellant's

claim that he stated that his account had insufficient funds in it at the time of the sale, but both Mr. Ruff and his partner, Mr. Parkhill, confirmed the appellant's testimony that he told them he had a buyer in Texarkana. The appellant's buyer in Texarkana refused to purchase the cabinets, but the appellant was able to sell the cabinets and he made a deposit into his account of $1,220.00. Despite this effort, there were insufficient funds in the appellant's account to cover the check to Ruff & Parkhill allegedly due to the fact a check for $925.25 deposited by the appellant into his account was returned to the appellant because it was drawn on an account that had been closed, and this amount ($925.25) was debited against the appellant's account. The appellant claimed to have made arrangements to pay the check off, and it was paid a few days before trial.

The appellant contends that the fact that he told Ruff & Parkhill that his check was no good and requested that they refrain from depositing his check until he could sell the cabinets and that he made arrangements to pay off the check negates any guilty intent that is required by Ark. Stat. Ann. § 67-720, which provides:

> It shall be unlawful for any person to procure any article or thing of value, or to secure possession of any personal property to which a lien has attached or to make payment of any taxes, licenses or fees, or for any other purpose to make or draw or utter or deliver, with intent to defraud, any check, draft or order, for the payment of money, upon any in-state or out-of-state bank, person, firm or corporation, knowing at the time of such making, drawing, or uttering or delivering, that the maker, or drawer has not sufficient funds in, or on deposit with, such bank, person, firm or corporation for the payment of such check, draft or order, in full, and all other checks, drafts or orders upon such funds then outstanding. [Acts 1959, No. 241, § 2, p. 1204; 1977, No. 155, § 1, p. 167; 1981, No. 899, § 1, p. 2112.]

According to Ark. Stat. Ann. § 67-722, a prima facie case of intent to defraud is made when a check is introduced into

evidence with an endorsement showing it was unpaid because of insufficient funds. *Rice* v. *State*, 240 Ark. 674, 401 S.W.2d 562 (1966). That the check was so returned is uncontroverted. In order to rebut this inference, the accused must put on evidence which demonstrates the lack of intent to defraud. *Id.*

The appellant testified that Ruff and Parkhill knew his check was no good when he delivered it to them and that he made arrangements with David Ruff to hold the check until he returned from the sale of the cabinets and deposited the proceeds from this sale into his account. Mr. Ruff would not confirm that allegation and Mr. Parkhill denied it. The appellant testified that he was aware at the time the check was written that there were not sufficient funds in his account to cover the check. His acts and assertions tend to support his claim that he had no intent to defraud. Also, the evidence that a check deposited by him into his account was returned because the account upon which it was drawn was closed tends to support his version of the transaction. However, whether the appellant's testimony was sufficient to overcome the state's prima facie case was for the jury. *Id.* Since intent is a state of mind which must of necessity be inferred, *Chaviers* v. *State*, 267 Ark. 6, 588 S.W.2d 434 (1979), the real qustion is whether there was sufficient evidence introduced by the state so as to present a fact question for the jury. Clearly, there was. The conflicts in the testimony were for the jury to reconcile. *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Although we recognize that the jury could easily have reached the opposite result, we cannot say that there is no substantial evidence to support the appellant's conviction.

Affirmed.

MAYFIELD, C.J., agrees. GLAZE, J., concurs.

TOM GLAZE, Judge, concurring. I concur, but I would quickly decide to reverse if plain error were recognized in this State. Unfortunately, the fundamental error to which I make reference was not raised below, nor is it argued in this

appeal. Because such an egregious error occurred, it should not go unmentioned.

The error — which I believe would normally be reversible — involves the prosecutor's participation and conduct in appellant's trial before a jury. A review of the record reflects that the prosecutor filed the charges with which appellant was convicted, testified against the appellant and cross-examined defense witnesses called on behalf of appellant. The record omits the *voir dire* and jury selection proceedings as well as the opening arguments; but it reveals the prosecutor participated in the closing argument, and there is a fair implication that he was actively involved in the jury selection.

One need only read the majority opinion to discover that this is what might be called a "close case." In fact, appellant's conviction in large part has been affirmed because the State made its *prima facie* case pursuant to Ark. Stat. Ann. § 67-722 (Supp. 1981). Section 67-722 provides that a *prima facie* case of intent to defraud is made when a check is introduced into evidence with an endorsement showing it was unpaid because of insufficient funds. After the State proved that appellant's check was insufficient, it became appellant's burden to demonstrate he intended no fraud. On this point, I agree that there was sufficient evidence for a jury to find fraud on appellant's part, but the question was undoubtedly a close one. Even if the evidence against appellant had been stronger, the prosecutor should never have testified and participated as an attorney in this case.

Called as a witness by his deputy, the prosecutor related the procedure he follows in cases in which a check is returned either because an account is closed or insufficient funds are in the account. He stated:

> We feel the crime was committed when the goods were delivered and the check was delivered for insufficient funds and therefore no payment received and that is why we take the position that once we reach the point where we actually have to file on a check, then we are

going to treat it as a criminal matter and proceed through the court.

The prosecutor related that appellant's check to Ruff and Parkhill had been returned as insufficient, and that by letter, he notified appellant that he could avoid prosecution if he would "pay off the check directly to the payee." The prosecutor further testified that the letter he mailed appellant was never returned, so he assumed appellant had received it; thus, the prosecutor filed charges.

The prosecutor further testified that after charges were filed, appellant called him at his office. He said that appellant wanted to discuss the check, but the prosecutor indicated he preferred to talk to appellant's attorney. Because appellant insisted that they talk, the prosecutor said that he gave appellant his rights "in a fairly informal fashion." The prosecutor testified the appellant acknowledged that he had received the prosecutor's letter notifying him to pay the insufficient check. To summarize the prosecutor's testimony, (1) appellant wrote an insufficient check; (2) he was notified to make the check good or criminal charges would be filed; (3) he failed to pay Ruff and Parkhill; and (4) because appellant did not pay, the prosecutor treated the case as a criminal matter and filed charges.

Before the prosecutor departed from the witness stand to participate again as the State's attorney, his deputy asked whether the prosecutor had any more insufficient checks made by the appellant. The prosecutor answered, "yes," at which time appellant's counsel objected to the question. The deputy prosecutor argued the other insufficient checks should be admitted to show absence of mistake, intent, plan or motive by the appellant in the instant case. The court sustained appellant's objection, indicating the State might retender such evidence on rebuttal. It appears from the record that this colloquy between the court and attorneys was in open court. After the prosecutor ended his testimony, he once again commenced assisting in the prosecution of the case.

In *Ford* v. *State*, 4 Ark. App. 135, 628 S.W.2d 340 (1982),

this Court indicated that under certain circumstances, a prosecuting attorney could testify. However, the majority Court in *Ford* stressed that the prosecuting attorney was not acting as an advocate in the case nor was there any evidence that he had participated in filing the criminal charges, preparing the case, appearing at pre-trial matters, or acting as the State's attorney at trial. Here, the prosecutor did all of these things. Judge Corbin and I dissented in *Ford,* and for the reasons given there as well as those I list above, I believe the prosecutor should not have participated in this case in the manner he did.